Our third case of the morning is Appeal No. 22-1171, Rock Hemp Corp. v. Dunn and others. Whenever you're ready. Good morning, Your Honors. Counsel, may it please the Court, my name is Nicholas DeStefanis and I appear on behalf of the Plaintiff Appellants of Rock Hemp Corp. This case was originally filed in State Court, Rock County, in Circuit Court, Wisconsin. After it was filed, there was a motion to dismiss in lieu of an answer, which led to an amended complaint and another motion to dismiss filed by the defendants. There was a hearing on May 10th wherein the motion to dismiss was denied and then the Court retracted its denial, but ordered discovery, invited the Plaintiff to file a motion for summary judgment, and invited the Plaintiff to explore potentially a default judgment. After the taking of one deposition, Plaintiff's Counsel inquired as to a potential settlement, received a figure, claimed that damages had become ascertainable, and removed the case to the Western District. In the Western District, we filed a motion to remand and Defense Counsel filed their same motion to dismiss as was in State Court. The main issues in this particular case are whether the case ought to have been remanded back to State Court due to waiver for participating in State Court and for timeliness issues. Waiver is relinquishment of a known right. They didn't know of the right. I mean, I think that's their position. In order to waive something, you have to know of it. Their position is, we didn't know of it until post-litigation filings, a letter that said the damages were $200,000. Once we knew of it, we filed our motion to remove the case to Federal Court. That's it. Yes, Your Honor. That is what they're claiming. This case has some particular issues. I think you mentioned the fact that they didn't know until after pleadings. In this particular instance, there were discussions prior to being filed. But that doesn't matter under our case law. I mean, that's a problem for you, right? Because we have clear case law that says it's post-litigation papers and filings. Because if it was pre-litigation discussions, Katie barred the door, right? Right. So I agree with what you're saying. I think that point really goes almost more towards the participation in the litigation. So two points to that particular question, Your Honor. Under Wisconsin state law, in a tort case, it says a party may not describe what damages you're seeking in that particular case. And that's what happened in this particular instance. However, the statutes in Wisconsin also indicate that for a pleading of punitive damages, it is either twice compensatory or $200,000, whichever is greater. And for that reason, we would argue that it complies with the Walker case, that the defendants were put on notice by the complaint that figures in excess of the jurisdictional threshold were at play. Having said that, I would also point out the fact that- Hold on. Within the four corners of the complaint, you believe that's true? Within the four corners. By virtue of the fact that punitive damages was claimed in the complaint, and statutorily, by function of statute, punitive damages are twice compensatory or $200,000, which is greater. Yeah, I understand the argument. Has any court ever held that? Yes. That that's enough? Actually, the fate court, a district court coming out of northern Indiana. And that fate court actually- Anything post-Walker? I'm sorry, what? Anything after Walker? I am not aware of any cases after Walker. However, we would argue that we comply with Walker by virtue of that. And so there's the important note to take in that there were these conversations that occurred before the complaint was filed. The defendants waited seven months into the litigation to ask, what are your damages? And coincidentally, that occurred after they got a pretty negative response from the state court. And the court in Walker, for its rules, it also does state that the purpose of the 30-day limitation is twofold. To deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system. So there are some tensions here regarding fairness and these procedural rules. One thing that I would point out to the court is that it appears as though section 1446 sub c sub 2 might address this. In that it states that, if removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332 jurisdictional threshold, the sum demanded in good faith in the initial pleading shall be deemed to be the amount of controversy except that the notice of removal may assert the amount of controversy if the initial pleading seeks, and this is lowercase two, Roman numeral two, a money judgment, but the state practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded, and removal of the action is proper on the basis of an amount in controversies asserted under sub paragraph a, if the district court finds by the preponderance of the evidence that the amount of controversy exceeds the amount specified in section 1332a. I wonder if this does not permit a defendant, such as in the defendant's instance where punitive damages are pled, to simply assert the jurisdictional threshold right away and have the district court determine whether it's met. That, by doing that, would have allowed the defendant to stay within the 30-day time limitation, avoid litigation in state court, and duplicative proceedings. Can I ask you a question as you're collecting your thoughts there? I know one other aspect of this that we may have some interest in is the contract formation that way. You think your client had a contract with some entity or some person when the initial purchase arrangement was undertaken? I think he believed he was entering a contract with an entity. When he decided he was going to endeavor this project, Grow Hemp, you can't go to Stein's, so he went to the internet and he found this website for CBD Inc., which tends to denote an organizational entity. On the website it says, CBD Inc. is an international holding company with the best high-percentage CBD genetics available for the market. So I think he thought he was dealing with a corporation. And that's important. Well, more than thought, right? And then they started to perform. Both sides of that started to perform on the contract. Your client placed an order. Correct. And there was a partial fill. Yes. Right, so it wasn't just, well, I'm hoping something shows up. I mean, he not only thought it, but then the deal started to go forward. Yes, that's correct. Yes, there was a sales order and then the agreement that is in the record. But the issue is that the defendant's names appear nowhere in that agreement. What difference does that make, though? Isn't that an issue for the arbitrator if there is even an issue on that? In Wisconsin. Well, yeah, I read that, but I don't think that applies here. I mean, if I wanted to start a business, I could just call the business whatever I wanted to. Let's say I wanted to sell T-shirts, right? Tom's T-shirts. And I could enter into a contract with you where you're going to buy T-shirts. I just call myself that. And then if there was litigation, you could sue Tom's T-shirts or you could just sue me. Or you'd sue both. Fair enough. Fraudulent inducement. Not even just the entity itself, but in the product. These seeds were advertised as the best high-percentage CBD genetics available for the market. They were advertised as being feminized. Which are all things I've had to learn about. They clearly were not. I get it, though. How do you distinguish the U.S. Supreme Court's reasoning in PrimaPaint? Your Honor. On fraudulent inducement. Why is that not controlling here? Because in this particular case, on the basis of not knowing who you're dealing with and the basis of being sold a product that... Right, so you say that led to fraudulent inducement of a contractual arrangement. Isn't that what was at issue in PrimaPaint? And the question is, who decides that? Well, in this particular instance, I realize the District Court decided the arbitrator has to decide that. But if the arbitration... Well, the line on PrimaPaint, right? I mean... Well... I remember, right? It's a U.S. Supreme Court decision. Okay. Go ahead. I don't want to keep going. This circuit itself has stated that... it is counterintuitive to enforce an arbitration agreement in a contract if the contract itself is in question. So that is really the distinguishment that I would... Oh, I'm sorry. Sphere Drake Insurance Limited versus All-American Insurance. If it's a question whether a contract came into being, then whether the plaintiff agreed to arbitrate, it is a dispute that cannot logically be resolved by arbitrators. And I think that makes sense because why are we going to force somebody to go to arbitration if, in fact, it wasn't really agreed to? Isn't that the first step that has to be determined beforehand? And really, the issue in that particular case is whether or not a contract is freely and voluntarily made. Counsel, Rockhampton wasn't deceived. You knew who Mr. Katz was, right? I'm sorry, Your Honor. You weren't deceived, were you, your client? My client was not deceived. Correct. You knew who Mr. Katz was, right? Come on. No, Your Honor. I didn't... I didn't know that until November. In fact, so these gentlemen, with their business practices, have left quite a few people very unhappy with them. I asked to take the deposition of a gentleman named Matt Kahn, who was listed on the website, the one who signed the agreement. And I was called by somebody, a third party, who was aware of this litigation, who told me... I had asked him about Matt Kahn. He said, I don't know who that is. Well, he had found out that Matt Kahn... A gentleman named Matt Louther had deceased and informed me that the gentleman Matt Kahn on their website is, in fact, Matt Louther, not the same person. He couldn't explain to me why he was using an alias. You were told Matt Kahn is Matt Louther. Correct. They're one and the same person. Yes. And that individual is deceased. Is deceased. In fact, he apparently committed suicide in one of the defendant's homes. Okay. You want to reserve any time for rebuttal? I would, Your Honor. Thank you. Okay. Very well. We'll give you a minute on rebuttal. And we'll hear from counsel for the defendants. Good morning, Your Honors. My name is Attorney Emilio Villagayle, and I represent the appellees in this matter. Before this court, there's an issue that she didn't be here, and she didn't have proceeded this far. And we're asking that the court affirm the district court's decision on all counts. There are primarily three matters here. The issue of the timeliness of the removal, whether or not the appellees in this situation waived their rights, and whether or not there was a valid contract to arbitrate. On each one of those counts, when you look at the statutes involved, especially as it relates to the first one, when you look at the case law involved, when you look at the legal principles involved, it dictates one outcome. It dictates that the removal was timely here, that the defendants couldn't have waived their right they didn't know they had, and that third, the plaintiffs and the appellant in this matter, contracted and knew exactly what he was getting into on behalf of his company. There was no fraud in the execution of the agreement. That's not an issue here. As it relates to the timeliness of the removal, this court need not look any further than the plain words of the statute itself, in section 1446, and the Walker case, which is binding precedent in this jurisdiction. It is not in dispute, and the plaintiff can't dispute, that both complaints filed in this matter, including the initial, and the amended complaint, did not have a monetary amount stated upon it. Under the statute, and under Walker, the only other way, the only portion of that statute implicated, are what post-complaint papers were made available, and when they were made available. The amended complaint was filed, I believe sometime in about February, in state courts, February 24, 2021. It stated a bunch of, a couple of counts, and then a line that alluded to seeking punitive damages. On April 12th, the defendants filed a response of pleading in this matter, in the state court proceedings, a motion to dismiss. On May 10th, the lower court, the state level in Rock County, had a scheduling hearing. It wasn't a hearing to discuss the motion to dismiss per se, at least that's not what it was scheduled to, but that wasn't what it was scheduled for. During the proceedings, there were conversations about trying to expand, or open up discovery on an expedited basis. Be that as it may, and regardless of what's said in here, it is in dispute, it's not in dispute, that the district court never made a decision, on that motion to dismiss. There is an actual order to that effect, and to rely on dictatorial conversations, or streams of consciousness, discussions that I have on the record, and trying to use that to evade the actual order of a court, just doesn't jive with what we know, and how the law works. As soon as discovery was reopened, myself, on behalf of my clients, reached out to opposing counsel, to get some information, about what exactly they were claiming. On June 15th, I received an email, from opposing counsel, on behalf of his client, stating that, they were seeking sums of over $250,000. The very next day, I had a deposition of his client, and his client confirmed, that his damages were in the hundreds of thousands of dollars. Within seven days of finding out this information, we removed the case. That's proper, that meets the standard. Now, the idea that pre-suit negotiation correspondences, can be used as a way to alert litigants, of their rights to removal in diversity cases, is quite problematic. And that has been confirmed, by this circuit, as well as other circuits, that have looked at this issue. Because of the host of things, that could occur. And under the circumstance, there lies a question. On the record, we don't know, because the letter in dispute, or the pre-suit negotiation correspondence, was sent to an attorney out in Colorado, who had represented a related entity, Latham Prime. There is nothing in the record to definitively prove, that that attorney represented, all three of the defendants in this case, that have been named. These discussions happened over a year, before the suit was filed. Most telling of all, and this will kind of get to the oddity, and to the heart, and why we have Walker, and why the statute is written as such. One of the correspondents says, we think we're going to, and I'm paraphrasing, but we're going to be seeking, and we think this case is worth, hundreds of thousands of dollars, and into the millions, or something to that extent. It's puffery. Puffery cannot be used, as a basis for putting a party on notice. What about Mr. DeSantis' point, that the punitive damages are clear, from the face of the complaint? Your Honor, that point also presents a deeper issue. On the face of the amended complaint, there is no number attached to it. So Wisconsin statute says, you have a ceiling, twice as of the greater of, so a jury cannot award the greater of, twice the amount of compensatory damages, or $200,000. The misconception here, and the issue here, is Attorney DeSantis, with all due respect, reads that as, a jury must award the greater of, $200,000, or twice the amount of compensatory damages. First things first, there was no basis on the face of the complaint, to estimate, what the compensatory damages were going to be. There was none. There's nothing that says, that you cannot state, the amount of the contract on the complaint. There is no law that precludes that. Now, yes, we knew, that the underlying transaction, amounted from a C transaction, from a C deal, worth $6,000. It would be, impractical, to place the burden, on litigants and defendants, to assume, that a transaction, a $6,000 transaction, involving seeds, can somehow escalate to $75,000, absent anything else. Or, that a jury, if, they're able to prove a case at trial, if they're able to prove, meet the standard necessary, for punitive damages, for a jury to assume, that a jury will, give or provide the plaintiff, with at least $75,000. And let's assume, and even if I were to make the assumption, that yes, the jury gives them $6,000, which is the amount of the contract. It says, no more than, twice the amount, which will be $12,040 in this context, for $20,000. So that means $12,000 will be the max. And so, I think based on the law, based on the facts, based on the statute, the timeliness issue, it's just a non-starter. Can we get the benefit of your perspective, on the contract formation questions, and the fraudulent inducement contention, and all that? Yes, absolutely, Your Honor. Again, we look at this, you have to look at this in context, of the FAA as well, and also general contract principles. And I do believe that, most recently, this court had, an opportunity to decide, or at least rule, on a slightly similar case, that deals with formation of contracts. And I believe, that decision would have been, the CCCV tractable case, which I believe was decided June 6th of 2022. And in that case, there's a difference between, what we have there, and what we have here. It wasn't that, there were issues with fraudulent inducement, because if it is a fraudulent inducement issue, it's arbitrable. That's well within the purview of the arbitrator. This court relied on fraud in the execution. Now just to alert the court, that case involved a situation, where you had two competitors, a trade secret dispute between two competitors. The defendants in that matter, had sent out an employee, who impersonated himself, used the wrong name, a different name, and lied about where he worked at, and used a fictitious business name, and signed a licensing agreement. Now, that employee ended up using access, the access gained with the competitor, to steal the software information, and went back to the prior employer, and they reverse engineered it. This court noted, that in a licensing agreement, and in that context, the very identity of who you're licensing your software to, is important. Because, at least the facts seem to illustrate that, if their competitors knew, that hey, we're going to be giving access to a competitor of ours, they likely wouldn't have entered into the contract. Those facts existed in that case. That had to do with a fraud in the execution, not fraud in the inducement. In this case, there is no doubt, that the client knows, who the parties were. As a matter of fact, the plaintiffs chose, not to sue CBD INC, and instead sued the partners, because they understand the fundamentals of contracts, and also Wisconsin, which says, you can operate, the real party behind the fictitious entity, are the partners of the entity that uses that name. There is no question here, unlike the tractable case, about the use of this name, CBD INC. And I have to make this point about the use, CBD INC. Despite, nothing in the record, indicating, that CBD INC, was ever used as CBD INC, and there's a difference, and it's a marketable difference, it's been brought up time, and time, and time again. This is not CBD INC. They didn't represent to be CBD INC. They represented themselves, as being CBD INC. Just because a trade name, ends with INC,  to something else. There is no... That's not the... I don't think this is what you're saying. I just want to be sure. The alleged, that the contention, that your adversary is making, about fraudulent inducement, is not on this point. Correct? It's not about, the name. It's not about, are these people one and the same? Are people using different last names? It's not that. It's that, the quality of the seeds, was misrepresented. And, is that correct? That is the contention here. And your honor, That's the alleged fraudulent inducement. Yes, your honor. And that's what makes this case, quite different, from any other case, because there is nothing on the record, that shows that, the arbitration clause itself, and the Supreme Court is quite clear on this. If you're talking about matters, or if you're talking about issues, or claims that arise, from the contract itself, including fraud and inducement, those are matters, that are arbitrable. Unless you can show, that the parties, excluded that. That's not the case here. And because the plaintiff's issues, and the plaintiff's claims, and allegations, go directly to fraud and inducement, those are matters, that should be arbitrable. We have a valid arbitration agreement. There are no allegations, about fraud in the execution, of the agreement. There are no allegations, that the identity somehow, made the plaintiff, or the identity of the defendants, or the seller, had an impact whatsoever, on the plaintiff. And we have the fact that, there is a broad arbitration clause in here, and most importantly, the plaintiff refuses, to submit to arbitration. On these grounds, it is quite clear, that the district court, did the right thing here, on all counts. They found the removal to be timely. They found that you can't waive, a right you do not have. And they also found, in addition to that, that a party cannot, or cannot be deemed, to have substantially litigated a matter, in the district court, by filing one responsive plea then, that hadn't been ruled on. So it doesn't even remotely come close, in my estimation, and based on the review of the facts, and the law, to a waiver scenario. And found there to be, a valid, arbitration agreement, that the plaintiff refuses to abide by. So, we ask humbly, that this court, affirm the decisions, of the lower court, on all counts. I will answer any questions, if you have any further questions, otherwise, my presentation's done. Okay, very well. Thank you very much. Yeah, Mr. Despondish, we'll give you a minute for rebuttal. Thank you. Thank you. Just a couple of points. My contention was never that, a jury must award $200,000, only that that's at play, and that that is sufficient, to remove the case. Did you ever, is the fraudulent inducement argument, forget whether it has merit or not, okay, is it as I described it, or do I misunderstand it? Exactly as you described it. Okay. That's correct. You know, under the FFAA, it is the defendant's burden, to convince the court, that there is a valid, written agreement to arbitrate. That is why, I believe, the Seventh Circuit, in Spear-Drake Insurance, ruled as it is. If there's not a valid contract, there's not a valid agreement to arbitrate. And I'm out of time. So, thank you very much. No, thanks to you. Thanks to both counsel. We appreciate it very much. We'll take the case under advisement. Thank you.